## ·S. L. WILLIAMS, *Assignee*, v. THE KEMPER HUNDLEY & McDONALD DRY GOODS CO., *a Corporation.*

1. ASSIGNMENT—*Laws of Oklahoma—Construction.* The voluntary assignment laws of Oklahoma have no extra territorial force or operation, and must be so construed as to embrace and operate upon deeds of assignment executed in Oklahoma and not elsewhere.

2. SAME—*Have no Operation Outside State Where Made.* Involuntary assignments which are made under foreign insolvent laws have no operation outside of the state under whose laws they are made; while a voluntary assignment is a personal common law right, possessed by every owner of property, unless prohibited by statute, and may operate in other states as well as in the state where it is executed.

3. SAME—*Though Upheld Against Non-Resident Attaching Creditors, Rule Not Invoked Against Resident Creditors.* Voluntary assignments valid in the state or territory where made, will on the principle of comity be upheld by the courts of other states against non-resident attaching creditors, even though the effect of the assignment is contrary to the policy and laws of the state where it is sought to be enforced. But this rule cannot be invoked as against resident creditors.

4. SAME—*Rule Applied.* A voluntary assignment made by a partnership, residing and doing business in the Indian Territory, to a trustee residing in said Territory, which is valid under the laws relating to voluntary assignments in Indian Territory, and which conveys property situated in Oklahoma, although said assignment contains preferences which would render it void if made in Oklahoma, will. on the principle of comity, be upheld and enforced against an attaching creditor of such partnership, who resides in the state of Missouri

5. SAME—*Deed Conveying Real Estate Sufficient as a Deed of Conveyance.* A deed of assignment made and executed in the Indian Territory according to the laws of that Territory, and conveying real estate in Oklahoma, is sufficient as a deed of conveyance in this Territory if it conforms to all the statutory requirements of Oklahoma. as to its recitals, execution and acknowledgement. . and has been duly filed for record in the office of register of deeds in the county where said land is situated.

6. LAWS OF OKLAHOMA—*No Application to Assignments Made in Indian Territory·* The assignment laws of Oklahoma only having been intended to embrace assignments made within the Territory, have no application to voluntary assignments made in the Indian Territory, and an assignee or trustee under an assignment made there, is not required to comply with Oklahoma Statutes, as to filing, schedule, giving bond, etc., in Oklahoma.

7. REAL ESTATE—*Conveyance By Deed of Assignment Made in Indian Territory Upheld in Oklahoma.* A voluntary assignment for benefit of creditors, executed in conformity with the laws of Indian Territory, and valid there,

10——IV.

which purports to convey real estate situated in Oklahoma, and which contains all the common law and statutory requirements to constitute a deed of conveyance in Oklahoma, will be sufficient to convey real estate in Oklahoma, although it contains provisions which would render it void as a deed of assignment in Oklahoma. And on the principle of comity, such conveyance will be upheld by the courts of Oklahoma as against a non-resident attaching creditor of the assignor. But said assignment would be held void as against a creditor of such assignor residing in Oklahoma.

*Error From the District Court of Cleveland County.*

On August 1, 1893, the Houghton Mercantile Co., a partnership at Purcell, Indian Territory, assigned all their property to S. L. Williams, of Purcell, in trust for the benefit of their creditors. The deed of trust included and sought to convey two lots in Lexington, Oklahoma, together with the business house of said firm situated thereon. This deed was recorded in the register of deed's office in Cleveland county, O. T., the county wherein the real estate in question is situated.

On August 3, 1894, the defendant in error, the Kemper Hundley & McDonald Dry Goods Co., who were non-residents of Oklahoma, and creditors of the Houghton Mercantile company, began their action in the district court of Cleveland county against O. P. Houghton and C. H. Jackson as surviving partners of the Houghton Mercantile company, on a judgment for six hundred and four dollars and sixty cents, rendered in the United States court at Ardmore, I. T., in October, 1893. They procured an order of attachment to issue out of the district court, and the same was levied upon lots 1 and 2, in block 55, Lexington, O. T., the real estate in controversy.

The plaintiff in error, Williams, assignee, by leave of court, filed his interplea in said cause, and set up the transfer to him by the deed of assignment, executed by the Houghton Mercantile company. Issues were formed

and the cause tried before a referee, who reported the facts and conclusions of law, which were over the exceptions and objections of plaintiff in error, duly confirmed by the court and judgment rendered against the plaintiff in error.    Motion for new trial was made and overruled; plaintiff in error appeals.

*G. M. Miller*, for plaintiff in error.

*J. F. Sharp*, for defendant in error.

The opinion of the court was delivered by

BURFORD, J.:    Two propositions are presented which are decisive of the questions involved.

1.    Was the deed of assignment sufficient under our Statute to constitute a deed of conveyance and to entitle it to be recorded?

2.    Can an assignment with preferences, good in the jurisdiction where made, be sustained in Oklahoma where preferences are prohibited, as between non-resident creditors and debtors?

A number of other questions are argued by counsel, but we think a proper determination of these two propositions will dispose of the case.

It is conceded that the assignment was valid in the Indian Territory; that the assignee duly qualified, gave bond and was engaged in the execution of said trust; that all the parties were non-residents of Oklahoma, and that the deed of assignment was made out of this Territory.

The general rule as to the effect of findings of a referee, is that they will be treated as special findings, and are taken as conclusive on appeal.    This cause was submitted on a stipulation between the parties as to certain facts, which agreement appears in the record.    This

agreement is also conclusive on the parties. Our atten-
tion is called to the fact that one finding of the referee
is in conflict with the agreed facts.

It was agreed in the stipulation "that the said O. P.
Houghton and R. A. Houghton, who signed the deed of
assignment, constituted the firm of the Houghton Mer-
cantile company, who owned and controlled the said
property in Lexington, O. T."

The referee finds that on and prior to August 2, 1893,
R. A. Houghton, O. P. Houghton and C. H. Jackson
were partners, doing business in Purcell, and owned the
lots in question. He further found that R. A. Hough-
ton died after the execution of the deed of assignment,
and that O. P. Houghton and C. H. Jackson were sur-
viving partners of the firm, Houghton Mercantile com-
pany. This irregularity should have been corrected in
the court below, and while the plaintiff in error excepted
generally to the referee's report, it does not appear that
the attention of the court below was ever called to the
defect in question. We do not consider the question as
essential to a decision of the case. The partners who
joined in the deed had power to convey the interest of
the firm in the real estate in question, as it appears from
the finding that the real estate belonged to the firm.

Section 3478, Oklahoma Statutes, provides:

"The property of a partnership consists of all that is
contributed to the common stock at the formation of the
partnership, and all that is subsequently acquired
thereby.

"SEC. 3479. The interest of each member of a part-
nership extends to every portion of its property.

"SEC. 3489. Property whether real or personal ac-
quired with partnership funds is presumed to be part-
nership property.

"SEC. 3515.   Unless otherwise expressly stipulated, the decision of the majority of the members of a general partnership binds it in the conduct of its business."

Under these provisions of statute, even if Jackson was a member of the firm at the time of the assignment, the action of the other two partners in executing the trust deed, would bind the firm as to partnership property.

We will now consider the sufficiency of the deed of assignment.   The universal rule is, that the *lex rei sitae* governs in the conveyance of lands both as to the requisites and forms of conveyances, and we must measure this deed by the rules prescribed by our statutes.

It is contended by defendant in error. that the deed of assignment is not executed and acknowledged as required by Oklahoma Statutes, and hence it conveys no title to real estate in Oklahoma.   The deed is in writing; contains the names of the grantors and grantee.   It sufficiently identifies the real estate, and is properly signed. It contains the conveying clause, "has this day bargained, sold and conveyed, and does by these presents grant, bargain, sell and convey unto the said Samuel L. Williams."   It contains a consideration, and recites that the real estate in question is owned by the Houghton Mercantile company.   It is dated August 1, 1893, and signed,

> "HOUGHTON MERCANTILE CO.,
> "REUBEN A. HOUGHTON,
> "ORRIN P. HOUGHTON."

The certificate of acknowledgment is in due form before a notary public of the Third judicial division of Indian Territory, which certificate bears the signature and seal of the notary.

It conforms in all respects substantially to the requirements of our statute, and is sufficient to. convey real

estate in Oklahoma, and did convey to the assignee all of the interest of said firm in and to the real estate in question, unless it is void for conflict with our statute on assignment.

Upon second proposition upon which this case must turn, it would seem from a casual examination of authorities that there is an irreconcilable conflict, but this apparent conflict grows largely out of the failure to separate the adjudicated cases into distinct classes, and to apply a particular rule to each class. When this is done, the apparent conflict to a considerable degree vanishes, and approximate harmony is brought out of confusion. In the very ably edited notes to the case of *Long v. Forest*, decided by the supreme court of Pennsylvania, and reported in 23 L. R. A. 33, all the cases are cited, grouped and classified.

It is the general doctrine that personal property, will pass, by a purely voluntary assignment for creditors, made in another jurisdiction from that in which the property is situated, subject to some exceptions.

A discrimination is made by some courts in favor of their own citizens, claiming as creditors against assignees in another state. Most of the cases hold that citizens of the state in which the assignment was made, are bound by the assignment, where the assignment is purely voluntary. A clear distinction is made between assignments which are purely voluntary, and such as are involuntary, or result from operation of law. The best considered cases support the doctrine, that where a voluntary assignment is valid in the state where made, it will on the principle of comity be upheld in other states and jurisdictions; but it was said in the case of *Green v. Van Buskirk*, 7 Wall. 139, "that this principle of comity will yield when the laws and policy of the state

where the property is located have prescribed a different rule of transfer from that of the state where the owner lives." A number of the states hold that if the assignment is valid in the state where made, that the courts of another state will not hold it void in favor of a nonresident creditor, even though it is not in harmony with the law and policy of such state. While still another class of cases hold to the rule that if the assignment, though valid where made, is in conflict with the settled policy or law of the state where the property is situated, that any creditor, foreign or domestic, may attach the property or levy on same and the courts in such cases will not recognize the foreign assignment. But we regard this rule as settled by the supreme court of the United States, in the case of *Barnett v. Kinney*, 147 U. S. 476. In that case a citizen of Utah had made a voluntary assignment under the laws of Utah of all his property to another citizen of Utah, for the benefit of creditors, with preferences. Part of the property assigned was in Idaho. The law of Idaho relating to voluntary assignments prohibited preferences and made all such assignments void. A non-resident of Idaho attached the property situated in that territory, and the question as to whether the attaching creditor or the assignee was entitled to the property, went to the United States supreme court for decision. It was contended in that case that the assignment being in direct conflict with the statutes of Idaho, prohibiting preferences, was inoperative to pass title to property in that jurisdiction, and that there could be no distinction made in administering the laws, and no right denied to citizens of one state over the citizens of another state.

Mr. Chief Justice Fuller delivered the opinion for the court, and entered into a lengthy review of the cases on

the questions involved, and held that the assignment laws of Idaho were intended to regulate domestic assignments, and had no reference to assignments made without that territory, and further said:

" While the statute of Idaho prescribed *pro rata* distribution without preference in assignments under the statute, it did not otherwise deal with the disposition of property by a debtor, or prohibit preferences between non-resident debtors and creditors through an assignment valid by the laws of the debtor's domicil. No just rule required the courts of Idaho at the instance of a citizen of another state, to adjudge a transfer, valid at common law and by the law of the place where it was made to be invalid, because prefering creditors elsewhere, and, therefore, in contravention of the statutes of Idaho and the public policy therein indicated in respect of its own citizens proceeding thereunder. "

While it was a fact in this case that possession was in the assignee when the attachment was levied, and the property in question was personal property, which fact entered into the consideration of the question, the case is valuable for settling the principle that state assignment laws are domestic laws, intended to operate upon the citizens and property in such state, and while they have no extra territorial force, will be enforced by the courts of other states upon the principle of comity, as against non-residents, and when valid in the state where made, will operate to transfer property in another state, though in conflict with the policy of the assignment laws of such state.

The rule enunciated in the case last referred to is supported by the following authorities: *May v. First Nat. Bank of Attleboro*, 111 Ill. 551; *Mathews v. Loyd*, 89, Ky. 625; *Frank v. Bobbitt*, 155 Mass. 112; *Butler v. Wendell*, 57 Mich. 62; *Thurston v. Rosefield*, 42 Mo. 474;

*First National Bank of Attleboro v. Hughs*, 10 Mo. App. 7; *Green v. Wallis Iron Works*, 40 N. J. Eq. 48; *Shuler v. Israel*, 27 Fed, 851.

In the case at bar it is contended by counsel for defendant in error that inasmuch as the assignment made in the Indian Territory was in conflict with the policy of our assignment laws, that the courts of this Territory should declare it void.  Evidently this contention would be correct if invoked in favor of a creditor residing in Oklahoma, but under the rule announced by Chief Justice Fuller, *supra*, our assignment laws were intended to regulate assignments made by residents of Oklahoma, and have no effect upon assignments made in the Indian Territory.  The assignment in this case was good at common law, as the common law allowed preferences.  It is good by the law of the domicil of the assignor, and on the principle of comity, it is the duty of the courts of Oklahoma to uphold it as against non-resident creditors.

The referee and the trial court held that the deed of assignment was not operative here because the assignee had failed to comply with the laws of Oklahoma in giving bond, filing schedule, etc.  He was under no obligation to comply with our assignment laws.  If the deed of assignment was sufficieht under our laws to convey property and was recorded as deeds are required to be recorded, the assignee took the title of the assignors, and this is as far as we have to deal with the question.

The final question is, do the foregoing rules apply to real estate.  It is contended by defendant in error that the law of the *situs* governs in relation to real estate, and that the deed of assignment being void under our statutes, it conveys no title, and that the rules applicable to personal property do not apply.  Upon this question there is again an apparent irreconcilable conflict of

authority, which is more apparent than real. A critical examination of the adjudicated cases reveals the fact that they are practically harmonious. It is unquestionably the law, that in the disposition of real estate, the law of the place where the real estate is situated governs, but in harmony with this rule, is the rule that a conveyance made out of the state or territory where the land is situated will convey title if it conforms to the requirements of the law where the land is situated. It has been held in a number of cases that an assignment for benefit of creditors will not convey real estate situated outside the country where the assignment is made, and this is a general rule applicable to assignments generally, but herein again is a distinction made between voluntary assignments and assignments by operation of law. The former are voluntary conveyances made by the assignor in respect to his own property, and over which he has control, and if the deed of assignment meets all the requirements of a deed of conveyance in the country where the land is situated, it will convey whatever of interest the assignor has. This rule is subject to the same exceptions that apply to personal property. If the deed of assignment is in its general effect repugnant to the law of the jurisdiction where the land is situated, it will be void as against creditors residing in the state or territory where the land is situated, but as against non-resident creditors, the assignment will be upheld on the principle of comity.

The majority of cases which seem to be in conflict with this rule, relate to involuntary insolvency, or such assignments as are the result of operation of law, or to cases where the deed of assignment did not of itself constitute a good conveyance of real estate in the country where the land was situated.

The editor of the notes in *Long v. Forest, Supra,* says:

" The general doctrine seems to be fairly established that a voluntary assignment for creditors if it is so executed as to constitute a sufficient conveyance, or accompanied by such conveyance, although it is made in trust for creditors, will be upheld in other states as to land there situated, unless the provisions of the assignment are against the policy of the local laws. In other words, that the same general rule which applies to all voluntary transfers of real property applies to such assignments."

The following authorities support the rule we have announced, as to conveyances of real estate in trust for benefit of creditors: *Rodgers v. Allen,* 3 Ohio, 489; *Sartell v. Jenett,* 9 Ohio, 180; *Lamb v. Fries,* 2 Pac. 83; *Palmer v. Mason,* 42 Mich. 152; *Pemberton v. Klein,* 43 N. J. Eq. 98; *Bently v. Whittemore,* 19 N. J. 462, overruling same case in 18 N. J. 366; *Merchants' Bank Baltimore v. Bank of United States,* 2 La. Ann. 660; *Eddy v. Winchester,* 60 N. H. 63; *Green v. Grass,* 12 Neb. 117; *Coffee v. Fourth Nat. Bank of N. Y.* 71 Me. 514; *Gordon v. Com. Nat. Bank of Providence,* 95 Ill. 298; *Heyer v. Alexander,* 108 Ill. 385.

The following states have held against this rule: Alabama, Massachusetts, Iowa, and possibly others.

We have been cited to the case of *Thompkins v. Adams,* 41, Kan. 38, as holding that a deed of assignment for benefit of creditors made in Illinois was ineffectual to pass title to real estate in Kansas. We fail to find any such principle announced in that case. Upon the contrary, the Kansas court expressly held that the deed from the assignor to the assignee made in Illinois was not only in conformity to the laws of Kansas, but was sufficient to pass title. But the assignee in Illinois had sold the land to a third party without complying with

the laws of Kansas as to the sale of such property, and as between the assignor's vendee and an attaching creditor, the court held that the vendee had no title. And this is as far as the decision in that case goes, and it is not in conflict with the rules we have announced herein.

In view of the foregoing propositions, which we regard as well supported by reason and authority, we are of the opinion that the deed of assignment executed by the Houghton Mercantile company to Williams, as trustee, is sufficient to entitle it to record, and to convey real estate in Oklahoma. That on the principle of comity, the assignment being valid in the Indian Territory, the courts of Oklahoma should uphold the trust as against a non-resident attaching creditor.

As further supporting our position, we cite *Schroder v. Tompkins et al.* 58 Fed. 673. A very instructive case involving the principles herein discussed is *Paxton v. Brown*, decided by the United States court of appeals, and reported in 61 Fed. 874.

Our conclusion is, that the district court erred in holding the attachment valid as against the title of the assignee, and the judgment of the district court is reversed, and cause remanded with directions to render judgment for the plaintiff in error, Williams, upon the finding of fact of the referee.

Scott, J., having presided in the court below, not sitting; all the other Justices concurring.